are one case for argument this morning. United States versus Daniel Rutherford Council. Thank you, Your Honor. May it please the Court. Justin Berg for Appellant, Daniel Rutherford. I'd like to reserve three minutes for rebuttal. Okay, that's done. Thank you. The Sentencing Commission's new policy statement, B6, controls over this Court's decision in Andrews because Congress expressly delegated authority to the Commission and directed courts to follow the Commission's policy statement. Is that the core question before us, that is, whether Andrews remains valid and therefore is applicable or not here? Yes, Your Honor, I think it is, but the government also raises a challenge to the validity of the policy statement, and so we respectfully believe that that challenge lacks merit for several reasons, but I'd like to highlight two core ones. So I think the government's only textual argument here is that changes in law alone are ordinary and not extraordinary, and the problem with that argument is that it improperly isolates a single factor and a multi-factor analysis, and the government's other primary argument is based on the First Step Act. But the First Step Act... Before you get to that, there's a threshold question which they have pressed in their 28J letters that I want you to address, Mr. They say, we can't even consider 1B113B6 because that is a substantive amendment and not a clarifying amendment, and our law tells us that substantive amendments don't apply contra the usual rule. Now, we saw your response to that, that this is all... That's just about 1B111 and nothing else. But has the language of our cases ever cabined it that way? I don't know that the cases have cabined it that way, Your Honor, but at least on my review, and I can't promise that I have not missed one of your cases applying this test, but when I looked, I believe every one of those cases involved an initial guideline, and most of them, maybe not all of them, cited 1B111. Some might have cited a previous case. And so our understanding is that that test has been applied in the initial guideline context, and I think the key point here is to start with the text of 1B111. And so as Your Honors have seen, it references the date of sentencing, and on the date of sentencing, it's impossible to file a compassionate release motion, and I'd also refer you to the application notes to 1B111, which all discuss changes affecting the calculation of an initial guideline. So our position is, as you pointed out, is the general rule is that courts apply the law in effect at the time they render the decision, which here is B6. Okay. Well, assume we could get to it, okay? Assume we got past that. Would you go at what I take to be Judge Smith's question, which is, you know, setting aside for the moment whether Andrew's controls or the guideline policy statement newly enacted controls, how do we navigate what is the heart of Andrew's, which seems to be a pretty clear argument that it would make no sense to look at the First Step Act, which expressly states what is going to be retroactive, and by implication, what is not to be retroactive, and see that it pulls in the very law that is at issue here, this 924C conviction, and looking at that, say, yeah, but they really meant for compassionate release to be something that can sweep in a look at the law that Congress said is not retroactive. Now, maybe that isn't what he was asking, but that's what's been troubling me, so I'll pretend that's what he's asking. I'll ask you, how do we manage that, which seems to be, like, kind of the center of Andrew's? Yes, Your Honor. So I think there are several reasons why the First Step Act does not foreclose B6, and so I think the primary one is that Andrew's itself recognized. The relevant statutory text here was passed in 1984, the phrase extraordinary and compelling. That text has not been altered since. The 2018 First Step Act did not change it, and as a result of that... Does that help your argument or hurt it? Because nobody until, like, five minutes ago thought extraordinary and compassionate meant change in the law. So, Your Honor, I think that the history from 1984 to 2018 doesn't tell us much because these motions didn't reach the courts. So I think that, and the other point I'd say, Your Honor, is I really think the inquiry here is the meaning of those words at the time that they were passed, and I think they're expansive. I'll turn to that because it's not exactly what you asked, but on the First Step Act point, because Congress in 2018 did not change the relevant standard, I think any argument based on the 2018 First Step Act is necessarily dependent on extra-textual considerations and congressional intent. And why can we not look at that? You press the point, you argue that, hey, the very fact that Andrews looked to extra-textual points shows that they were acknowledging ambiguity and they were out of bounds, or at least that's what I took your argument to be. But we've got cases, we've got a case called Robinson, you focused insight, but we have other cases that say that, look, we employ ordinary tools of statutory construction to decide whether there's ambiguity. We don't just look at text, we look at context. In fact, Andrews makes that point emphatically. Why can we not do that here? What was wrong with Andrews doing that to decide whether or not the First Step Act was clear on this subject? So Your Honor, I think that the key point here, there's a couple key points to that question. The first one is that the relevant standard here I don't think is whether a panel would have resolved this differently than the commission. The question is, was the commission manifestly contrary to the relevant statute? And so I think that within that, as Batterton instructs, there is a realm of reasonableness that the commission could be within. And so...  On the... You're back to my point. Yes. Because the government's argument is, it is manifestly contrary. And they go out of their way to say, on policy, you know, maybe our heart is with Mr. Rutherford, we would support legislation. But this is Congress's to-do. And Congress, in the First Step Act, said, hey, 924C, not retroactive. And the commission, well-motivated, smart, good people, four to three split, a one-vote difference, says, no, no, you can look at that. Now that, their argument is, it is manifestly contrary. What's your argument against that? So the first argument, Your Honor, is that I think this court, you're correct, obviously there are other statutory interpretive tools that you can look to if the text isn't clear. I think if we get there, we already don't have clear text for closing the commission's But I think my main argument there, Your Honors, is that, again, so first of all, 403, I think we have to look at exactly what it did. What 403 did is it said, these changes shall apply. It was phrased positively. These changes shall apply to people who have not yet been sentenced. What 403 did not do, and what I think the government is reading it to say, is to go the next step, which is, these changes may never be considered in any combination, no matter the change in law, in any set of circumstances. And that is where, I think, the problem is for the government. And I would point, Your Honors, to a How is that a problem? Yeah, so the relevant rule, I think, here comes from Concepcion, Kimbrough, Dean, and Rodriguez, which we cite in our briefs. And the rule that the Supreme Court has stated in these sorts of cases is that Congress knows how to expressly direct sentencing practices, and as a result, courts should not erect implicit limits without a basis in clear statutory tests. And here I Speaking of Congress, and I realize I may be drifting now into the government's position relative to the validity of the guideline here, but I keep coming back to the fact that while delegation itself may not be rare, we're the rarest of birds, but I'm not sure I've seen a delegation that's more explicit than it was in this case, where examples were called for, and as a result, that the policy statement we're looking at does exactly what Congress asked the Commission to do, in part, to provide examples. So does that impact at all on the analysis here? Yes, Your Honor, I think it does. I think it's key to the analysis because this is a with Andrews or B-6, and Congress is explicit on which one would control if there is a conflict. We don't think there's a conflict, but staying on this point, Congress not only expressly delegated, as Your Honor just pointed out, it also explicitly directed courts to follow the Commission, and it made the policy statements here binding. And I think that's very significant because Congress And Congress also, through the explicit language in the relevant subsections, not only in the language but in the headings, made this, again, a rather rare instance where these factors could be considered and let district courts know, it seems to me, that they were not going to be free to willy-nilly impact or construe extraordinary and compelling in too broad a way, specifically, to take into account changes in the law. So for that, Your Honor, I think we have to go back to the word extraordinary, which I think is a capacious phrase. And I would point, Your Honors, I think a helpful source Well, it may well be ambiguous, in fact. Well, Andrews called it amorphous and ambiguous, but I think a helpful place to look here Would something be amorphous and ambiguous about some things and not about others? I mean, you can have a hazy boundary line and still have something that you know is outside that boundary, can't you? You can, Your Honor, and I don't think that's the case here because Andrews, for two reasons. The first one is that Andrews described this dealing with a similar problem, but the second I would point, Your Honors, to this Court's decisions in the 60B context. Cox and Satterfield, I think they're helpful here. It's not exactly on point, but 60B has an extraordinary circumstances test. And those cases dealt with a very similar question. District courts had erected a per se rule that changes in law can never be considered similar to the government's position. This Court, it's a paraphrase, but says we emphatically rejected that position and instead took precisely the approach the Commission has here and said changes in law can be considered alongside all the defendant's other individualized circumstances, which I think helps show in this realm of reasonableness that the Commission was reasonable to take a very similar approach. Are there any limits to what the Commission can declare extraordinary? Yes, Your Honor, I think there are. And so an example, I mean, we could come up with fanciful hypotheticals. Everyone with brown hair, I think that would be an abuse of discretion. I think the standard here is Batterton and manifestly contrary to the statute. And Batterton's application helps here. Batterton applied that standard and asked. There was a definition of unemployment. But the question was, did the agency define this term in a way that has no reasonable relationship to any accepted understanding of the relevant term? And so I think we can come up with examples outside of this phrase, but it's broad text. You've got a good argument. You've got a real good argument. But for this First Step Act, right? The Sixth Circuit, and we quoted it, and Andrew said, why would the same Congress that specifically decided to make these sentencing reductions non-retroactive in 2018 somehow mean to use a general sentencing statute from 1984 to unscramble that approach? That is, that seems to me to be the central issue here. And I know you said it in your briefing. Go ahead. Can I just jump in and give a hypothetical that I think piggybacks on what Judge Jordan is saying? So assume the hypothetical is as follows, that the district court reduces the sentence to what the sentence would have been had the First Step Act not been retroactive. Isn't that giving the district court authority to undo what Congress said don't do? So first of all, Your Honor, as I'm out of time, I'll of course answer your question. So on the hypothetical, Your Honor, no. And I think the quickest way to explain that the answer is no there is I think even the government agrees that let's say there's some other extraordinary and compelling basis, right? And then we get to 3553. At the 3553 stage, if the court gave someone the sentence they would have gotten in your hypothetical, I think everyone would agree that that's permissible. And I think this points out that... But how would a court go about determining whether or not there's just lip service to those factors? And it really is a way for the commission to say to the district courts, go ahead and if you want to, quote unquote, make them retroactive, that would be fine. Doesn't that conflict with what the First Step Act says? So, Your Honor, I think that if a district court gave lip service here, that could be reviewed on abusive discretion and reverse. And I think the key point about B6 is that it explicitly says changes in law by themselves are not automatically sufficient. It says courts must balance all the individualized factors. And if courts fail to do that, that very well may be a reversible error. So I think the proper way to approach this problem, Your Honor, asks about is on an abusive discretion review. And I think I just bring... I bring us back and I'd like to answer Judge Jordan's question as well about 403. If you allow me, I know I'm out of time. Let this guy have a question. Okay, sure thing. So, Your Honor, on your question, Judge Jordan, I think the problem with that issue that you raised is that we don't... The 2018 Congress did not alter the relevant words here. And so I think as a result, we don't know what the 2018 Congress was thinking about compassionate release. It could have been thinking something. It could have been thinking nothing. And I think this is...  Why isn't the fairest interpretation of the statute that they weren't intending to do anything at all to compassionate release? And that, indeed, nothing had changed in all the years that that had been in effect. Nothing. It had always been those same four things, none of which included taking a look at the change in the law. And when they made their decision and said things, certain things are retroactive and implicitly certain things are not retroactive, they certainly didn't mean to say, insert elephant in mouse hole. And this means you can make things retroactive if you like at the compassionate release stage. That's... Mr. Zosmer's a much more articulate fellow than I am. And he'll say it better than I just did. But I take that to be kind of the main thrust of their brief. And I think I have your answer to that, which is, yeah, they did. There was nothing that prevents us from looking at it that way. So I think the answer is... I would phrase it slightly differently. First, I'd say that is an argument not based on statutory text. It's based on congressional silence, which I think Kimbrough and Concepcion tell courts not to do. And the other point I'd say, Your Honor, is you mentioned the factors since 1984. The fourth factor was a catch-all, which I think was broader than B6. So the catch-all said courts could consider any other combination of circumstances, which I think... I don't think we need to look at that history, but if we do, it shows that a combination-focused approach is always... Had anybody ever said, do you have any case predating this policy guidance that said a change in the law constitutes extraordinary circumstances for compassionate release purposes? Not for compassionate release purposes, but I'd point you to the lack of any cases here. You just invoked the term congressional silence a minute ago. And to me, this scenario that is attendant to our process even under the Rules Enabling Act and the process that's followed here does involve congressional participation, if you will. Correct? Yes. Input. Judge Jordan pointed out the close vote in the Sentencing Commission, but four always beats three. And when this did go up to the Hill for its consideration, did it not? It did, Your Honor, and... Nothing happened. That's correct, Your Honor. And I do think... What's the impact of that? So I think if we turn to reading meaning into legislative silence, I think we would have to consider that as well and to... But it's not, and I think actually... If I recall correctly, you did not in your brief raise legislative acquiescence as that term is normally used, but I think the government attempted to bat it down at some point even though it seemed to be a straw man, if you will. But doesn't that have some real significance here that a Congress allowed these changes, profound as they may have been, to get by when they were given an opportunity to do otherwise? Yes, Your Honor, and we did not make this argument because we think the focus must be on the text in 1984, but I do agree with you. I'd also point, Your Honor, to the Kimbrough decision in the Supreme Court. There, the court used similar reasoning. There was a dispute, and they did derive meaning from Congress using this mechanism and not rejecting the relevant guideline. But I... There's language in other cases, and they're quick to point to it and say, hey, don't read into that. Sure. Yes, Your Honor. And that's why we didn't read into it, and that's also why I think the line of 403 is so flawed because that is also an argument that's ultimately about congressional silence. I mean, we're back to where we started.  Okay. Yes. Do you have other questions? Okay. Thanks very much, Mr. Berg. We'll have you back on that. Thank you. Good morning, Your Honors. May it please the Court, Robert Zossmer on behalf of the government. I believe the government's position has been stated in the discussion here that this guideline is not effective given that it directly conflicts with congressional directives generally with regard to the definition of extraordinary and compelling, and specifically with regard to this change... The government's position has been expressed numerous times in various courts. This issue has come up different places, hasn't it? Absolutely. And you have asked us to please send this whole thing back to the district court. Am I correct? In this specific case, the Rutherford case, yes. Because the district court didn't pass on... For the district court to pass upon a rule of law. Exactly. You've not always taken that position, have you? This case is actually unique. I mean, we've dealt in this district with a thousand compassionate... How is it unique in that you want to ask, notwithstanding the judicial economic question of it all, a district court to rule on what is clearly a legal issue, not simply a resentencing issue via application of 3553A factors. So we have no other case, Your Honor, before this court in the posture of Mr. Rutherford's case.  Carter was argued. Carter was decided. Carter was thoroughly vetted. It has a thoughtful opinion from Judge Beadlestone. What else do you think you're going to get, Mr. Zosmer? It seems like that's as teed up as it can get. On the legal issue, what other thing are you going to get? Your question, are we there yet? Carter is absolutely teed up. It's appropriately before this court. We can have the legal argument and this court can apply it to Carter. But it's a legal question, right? So the point is, what's the sensible reason for saying, hey, everybody knows what the issues are and indeed, you do have a thoughtful opinion from a district court that's thoroughly vetted it. Not in this case, but it's right in front of you. What is the advantage of sending this back? What's to be gained? I am puzzled by this. Just as I am puzzled by the irony, which your colleagues across the hall here are pointing to, of you at the same time you're telling us, don't do this, you're telling district court judges, wait, stay your case to see what the court does in Rutherford. I'm not only puzzled, I'm also surprised and I don't get surprised very often at this age. Two things, if I may address the two things your honor has said. First, I agree, there's not much to be gained. But it is my responsibility to follow the rules that are set down by the courts. And the rules that are set down is that we're a district court where somebody is seeking relief based on a new legal rule that was not presented to the district court. That this court, an appellate court, will not issue an advisory appeal. Would you agree? We typically don't. But when it is, as Judge Smith has pointed out, a pure question of law, and it certainly appears that the judicial economy thing weighs heavily, and that there are district courts across this circuit waiting to hear from it, and you indeed have told those district courts, wait and hear what they say, for you then to say to us, don't decide this, send it back, is just very, very unusual. Your honor, with all... We're getting a concession. With all respect, I don't think that's entirely fair, your honor. We follow the rules set by this court. We filed a motion in this case exactly a year ago, in June of 2023, for summary affirmance so that Mr. Rutherford could go back and file a motion on November 1st exactly as Mr. Carter did. This court denied that motion for summary affirmance. It's then our responsibility to tell... Fine, fine. Mr. Zeisler, fair or not, can we agree that at least with the passage of time, the judicial economics argument really weighs against your position here? I believe that this court should decide the Carter case. I believe the Carter case is teed up, to use your honor's term, and it's an important issue. You don't have to say anything more about it, Mr. Zeisler. Kudos for tenacity. All right. Why don't you please take on what I think is one of the primary arguments that the other side has made here, which is, in arguing that Andrews should control, you face the problem that Andrews itself says that extraordinary and compelling reasons is an amorphous and ambiguous thing and that accordingly, under Brand X, under Neal, which you rely on, there's no sound basis for us to keep relying on Andrews because now we have the Sensing Commission powers at its zenith, as your colleagues would say, did say, given that it's an express delegation to them to say what extraordinary and compelling means, have said what it means and that changes everything. It changes everything because Andrews acknowledged the ambiguity in it and now the ambiguity has been taken out by an express statement from the entity expressly delegated the power to say what that phrase means. Andrews states that the statute is ambiguous, amorphous, in a general sense, and I don't think anyone could dispute that. As your honor suggested in one question, there's always going to be an outer limit at which there's uncertainty and that of course is where the agency can step in. But there are also matters in which there's no ambiguity whatsoever and in its opinion in Andrews, this court expressed no hesitation in suggesting any ambiguity with regard to the specific issue before this court which is a change in law that is non-retroactive, a quote, extraordinary circumstance. Take on the issue of the fallacy of composition as they put it. That nobody has suggested including the sentencing commission that a change in law alone is okay for extraordinary and compelling but that it can be part of a mix and that nothing in the First Step Act even implied to the contrary. So I respectfully disagree with that, your honor. Your honor, if we drill down on 1B1.13b6 what it says is that the person serving an unusually long sentence has served more than 10 years and there's a gross disparity as a result of a change in law. If you drill down on that, the only thing that's being presented there is a change in law. The fact that the person has served more than 10 years there's unfortunately nothing extraordinary about that. The sentencing commission tells us that last year over half of federal sentences were more than 10 years. There's nothing extraordinary. And the fact that there's a gross disparity with the sentence that would be imposed today that's the change in law. There's nothing there other than a change in law. We have never disputed what Andrews goes on to say which is that if someone does present an extraordinary and compelling reason such as medical grounds as Mr. Rutherford unsuccessfully advanced that at the second stage of review at the discretionary stage the court looks at all the factors which may include the current lay of the land. And that's Concepcion by the way. And their argument in response to that and four commissioners on the sentencing commission agreed with it was well that's not enough because it should not just be in the 35 pre-factors after eligibility is determined it can and should be part of the determination of eligibility because if you've got a wildly disparate sentence for the very same crime for somebody who's sentenced after this first step act for somebody who is sentenced before the first step act that in and of itself as part of an overall mix is something that a judge can take account of doesn't have to but may it's phrased, the policy guidance is phrased in the permissive not the mandatory. But the overall mix that your honor is referring to in the average case including Mr. Rutherford's are all non-extraordinary circumstances. That's putting the rabbit in the hat you can't define it that way that's the whole question is it extraordinary or isn't it and is the commission allowed to say that is a piece which could make this overall thing extraordinary and that a judge should be allowed to look at that a judge at that stage should be allowed to look at it. We're dealing with a guideline that says that a change in law can be an extraordinary factor and we're dealing with motions such as Mr. Rutherford's where that is the only conceivable extraordinary factor that's being advanced and that runs directly in conflict with this court's interpretation of the term, it runs directly in conflict with congress's directive in section 403 of the first step act that the 924C change is not retroactive there is, on the average application of 1B1.13b6 there is no extraordinary factor other than the change in law and our position is that's a matter for congress to decide that's not something that the sentencing commission Doesn't the policy statement say that there is a limitation that it cannot be the change in law only, isn't that what the commission was attempting to do under the limitations and change in law I think it could make That's the concern that you're raising Sure, I think that's a reasonable suggestion that that's what they've attempted but the question is what did they write and what they presented here That's what they wrote That's not just an attempt Limitation is very prominently out there But what it actually says is what makes it extraordinary is the change in law and again, that's all that's being advanced in this case Is that an argument for the district court then No Like you go to the district court judge and you say, your honor in this case the policy guidance tells you that this isn't extraordinary because it's the only thing he's advancing and therefore it can't really play a part, you can't give him this break But that's something you argue to a district court judge under the policy guidance and not something that you ask the court of appeals to set down a hard and fast rule on for all cases I think that's the legal issue that as your honor says has been teed up which is when you have a case that this guideline invites where the only extraordinary factor is the change in law How would you have us write that because actually it sounds like you might be making the other side's case so that tells me I'm misunderstanding you because it sounds like what you're saying is we should write an opinion that says when the only thing at issue is the change in the law that's something you can't do That's how I'm understanding it Well, but I'm also and that's different than saying if there are other factors being considered you could also think about the change in the law But I'm also saying that this guideline as written allows a relief based solely on a change in law I'm very interested in how this is written because I see how it's written and I'm also interested in and I had wanted actually to ask your friend on the other side the very basic question How does this work? You've got three district judges here actually We've all, the three of us been our district judges How does this work in the courtroom? Because I read 6C as really requiring two inquiries Two stages of analysis and the first is one that looks to extraordinary and compelling reasons Would you agree in the first instance that's what subsection 6C said? Yes Alright So if a defendant otherwise establishes that extraordinary compelling reasons warrant a sentence of and I'm not sure what otherwise means there although I think I know Under this policy statement a change in the law including an amendment to the guidelines manual that has not been retroactive may be considered for purposes of determining the extent just the extent of any such reduction So in a sentencing in a reduction procedure just exactly how is that going to work as far as the advocates are concerned and in particular how the judge before whom the motion has been presented is to analyze So subsection C that your honor is quoting is a faithful application of what this court and all other courts have said in how compassionate release works You have two stages You have the threshold inquiry of is there an extraordinary and compelling reason that allows us to even consider a sentence reduction and then if there is an extraordinary and compelling factor that gets you over that hump then you consider everything including the state of the law rehabilitation, anything that by itself might not permit you to get past that first stage That's what subsection C says And rehabilitation may in tandem with other Absolutely At the second stage everything is fair game and Andrew says that and Stuart says that So C does not break any new ground we have no quarrel with it What B6 does is it tries to establish along with medical, family, age, abuse another threshold that gets you past that first threshold and what it allows is you to get past that first threshold solely based on a change in law When you use the word solely that's the problem that's where they try to pull you up short and where I want you to get more detail because that isn't their argument Their argument isn't solely and the Commission seemed to say it can't be solely that And it sounds like you're crafting the case presented that the only issue that's being presented is that Rutherford only presented the change in law and that we should decide the case solely on that narrow issue Is that what you're saying? Well that would be one fair approach but I'm also saying more broadly that when you read this guideline it does have this vague statement at the end in consideration with everything else but there should be a threshold finding that the change in law is not an extraordinary and compelling reason that can be considered in the mix Why? Because as Andrew says it is ordinary that sentencing changes are not made retroactive and specifically in this matter with respect to 924C you have Congress explicitly directing that the change is not retroactive So it comes back to it comes back to an argument that it doesn't matter whether it's part of an overall mix The government's position is the change in law can never be considered You could come in and say my father's on life support I have cancer I'm 89 years old and by the way they changed the law I got a 300 year sentence and people sentenced today get 5 years Your position is that's it doesn't matter all that other stuff they put that in the bucket too It's a problem What are you saying? Yes Our position is that goes in the bucket at the second stage based on your hypothetical that person's getting past the first stage based on family and medical circumstances Can you explain the first and second stage? Yes please The first stage is the person has to advance a quote extraordinary and compelling reason The eligibility stage Let's just call it that While Congress has delegated to the Sentencing Commission the authority to define extraordinary and compelling reasons that definition has to be reasonable has to be within the bounds of that term extraordinary and compelling Our position is that a non-retroactive change in law I'm quoting Judge Porter here a non-retroactive change in law is by no means extraordinary It's actually ordinary We don't go further It is not part of the eligibility stage The second stage It can never be It doesn't matter how much other stuff you put how many heart-tugging things you put with it as soon as you think about change in the law you've gone past what Congress allows You should be considering every other thing I'm trying to pin down exactly what your position is Think about all those other things but the second you think about change in the law you have gone outside the clear meaning of what Congress has said It just can never be part of an eligibility analysis period That's right I don't stand alone in saying that The 6th and 7th Circuit said it prior to the adoption of this amendment Why are you making it in stages? I'm not following the stages Why not just make it one analysis which is we can't look at the change in law but we can look at all of the others whether he's got cancer whether he's 89 years old Why are you making it in stages? Every court has interpreted this as a two-stage matter The Supreme Court essentially does that in the Concepcion case as well with regard to a different provision which is Section 404 There's always an eligibility stage and then a discretionary stage At the discretionary stage once the court has decided they've given me the key to the lock it's an extraordinary case I can consider a sentence reduction even though sentences are ordinarily final Now I have discretion At the discretionary stage this is actually written into 3582 And your position is at the eligibility stage we don't even go further If what? If the government does not set forth an extraordinary and compelling reason as defined by the Sentencing Commission within the bounds of its authority then we don't go further It's over And this court has said that many times so has every other court I don't believe that's a controversial proposition If you do have an extraordinary and compelling reason which by the way the government often agrees does exist usually based on medical circumstances then at the next stage the statute directs that the court has to consider the 3553A factors it has to consider whether the defendant is a danger to the community Once you get into 3553A everything is fair game including the current state of the law Can you meet the argument that your opponents make with respect to 994T They say there's something to be understood from that statute and that Congress when it wanted to cabin things it knew how to do it and it said we're only going to give you one piece of advice here and that is rehabilitation alone cannot suffice Rehabilitation alone cannot suffice It didn't say rehabilitation couldn't be part of the mix in deciding what's extraordinary and compelling reasons and in like manner the commission has suggested that a change in the law alone could not suffice but it could be part of the eligibility mix and that's just like what Congress did with 994T What's your answer? So the answer is 994T says that rehabilitation alone is not a factor That's consistent with other parts of the Sentencing Reform Act where Congress was trying very hard to deny that My question to you is why isn't that a template that is being followed by the Sentencing Commission and that we should give deference to? Because it can't mean that anything else is fair game just because they only mention rehabilitation My friend Mr. Berg used the silly example of people who have brown hair have an extraordinary factor We use the example in our brief of you've served a year in prison If the Sentencing Commission ever declared that that's an extraordinary factor this Court I presume would reject that because there is a limit The Congress said the factor has to be extraordinary and compelling So yes, you can have other factors and certainly as defined by the commission but not something that as Andrew said is positively ordinary or rehabilitation That's the template If I could just say one more thing about the statute It's referenced in our brief but I think it follows on something that Mr. Berg said If we take a look at the statute he said there are no cases up until 2018 and there are a few cases up until then The reason is the Bureau of Prisons had authority They had the key Under the statute as it existed before 2018 only BOP could file a motion Now an inmate can But as your honors have pointed out the term extraordinary and compelling never changed It makes no sense that Congress would write a statute that gave BOP the authority for those decades and thought BOP would consider a change in law That makes no sense It gave BOP the authority because the things that justify compassionate release are the things that BOP has expertise over Medical, family, age They're the custodian of the inmate BOP only? Not BOP only BOP's reasons may not be separate and apart and in fact entirely different perhaps from those with which a prisoner applicant Sure, but here's the interesting thing When Congress amends the statute in 2018 to give inmates the right to file they keep BOP's role in the process They require the inmate first to ask BOP Why would you possibly do that if an extraordinary factor that allows release is an analysis of sentencing law which is completely beyond BOP's knowledge and authority It's very clear that this statute is focused on emergent circumstances If it was very clear we wouldn't be having this argument But I'm here to argue That's our presentation and I appreciate Your Honor's consideration Thank you very much Mr. Brewer, we'll have you for your rebuttal Your Honor, I'd like to address two main points One is the question about what B6 did and the other is, Judge Jordan, your question is about 403 But before I start, I just want to clarify one thing The last thing Mr. Zosmar said The statute never gave BOP the ability or the authority to define extraordinary and compelling It has always given that to the Commission And so, just to clarify that We're not confused about that You might want to answer his point which is it was clear that when BOP was the only one that could make a motion based on extraordinary and compelling circumstances Congress had laid out what I mean, Congress understood the boundaries that BOP was operating under and it certainly didn't imply or mean for them to take into account changes in the law so that when they changed the law and they didn't change anything about that it's still the case that law doesn't constitute extraordinary and compelling I mean, that's compelling circumstances That's what I take his argument to be So, if you want to answer that, that's a good thing to answer Sure, Your Honor I think the answer there is that the 1984 Congress did not know how BOP would act in the years after 1984 and the Supreme Court's decision I forget the whole thing, it's Wisconsin We cited our brief, 2018 It says, the inquiry is to look at what the words mean when the statute was passed So, extrinsic evidence post-dating those words that have never been changed I don't think is the proper place to establish that the Commission's definitively foreclosed here So, turning to 403 I take the question Judge Shorten from our last discussion to be essentially What do we do with the fact that Congress in 403 chose to apply these law changes prospectively And prospectively only Yes You keep saying they were silent but I don't know any way to read that statute except to mean these things, we're telling you what's prospective and we're telling you what's not retroactive We're going to tell you what's retroactive and we're going to tell you what's not retroactive Yes, Your Honor And when the Commission issues a policy statement change in law means change in law What's prospective and what's retroactive So Yes, the Commission could have clarified that in greater detail, but they didn't Is that a problem? No, Your Honor Two part answer there. The first part is what you just asked I think the fact that change in law could cover both I think illustrates a problem with the 403 argument which is that we are implying essentially an additional limit to 994T which is never consider changes in law no matter the law change and we're implying that from a specific decision to withhold a specific penalty but Your Honor, on the second point I think all that Congress did no more and no less in 403 was they said that inmates will not be automatically eligible I think a good place to compare to which we haven't discussed so far and I see I have four seconds left is 404 404 is an example of when Congress does make something retroactive and it makes everyone automatically eligible B6 does nothing of the sort All it says in the text of B6 changes in law may be considered I disagree with my friend that it says changes in law are an extraordinary circumstance Okay, thank you very much Mr. Berg, I want to very sincerely thank you and your colleagues at Kellogg Hanson You've done an exceptional job Talk about extraordinary and compelling You've done an extraordinary and compelling job with your briefing We appreciate that work Is this an example? There you go And we appreciate the work that the U.S. Attorney's Office has done for us as always to help us understand these issues We've got the matter under advice